804 F.2d 87
 15 Collier Bankr.Cas.2d 1452, 15 Bankr.Ct.Dec. 682,
Bankr. L. Rep. P 71,507
 In re EBBLER FURNITURE AND APPLIANCES, INC., Debtor.
Donald SAMSON, Trustee, Plaintiff-Appellee,
v.
ALTON BANKING & TRUST CO., Defendant-Appellant.
 No. 86-1507.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 22, 1986.
Decided Oct. 23, 1986.
 
 Steven N. Mottaz, Thomas, Mottaz, Eastman & Sherwood, Alton, Ill., for defendant-appellant.
 Gerald M. Burke, Carr, Korein, Kunin, Schlichter & Brennan, East St. Louis, Ill., for plaintiff-appellee.
 Before FLAUM and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.
 FLAUM, Circuit Judge.
 
 
 1
 This suit involves an issue of first impression in this circuit. We are asked to define the word "value" as used in 11 U.S.C. Sec. 547(c)(5). We affirm the bankruptcy court and district court in their use of "cost" as the proper measurement in this case. However, we remand this case for further proceedings to determine the precise amount of the preference payment that the defendant received.
 
 I.
 
 2
 The present action is by the trustee in bankruptcy under 11 U.S.C. Secs. 547(b) and (c)(5) (1986), to recover preference payments received by the defendant. Ebbler Furniture and Appliance, Inc. ("Ebbler"), filed a voluntary petition for relief pursuant to the Chapter 7 liquidation provisions of the Bankruptcy Code.
 
 
 3
 The appellant, Alton Bank & Trust Co. ("the Bank"), was the inventory financier for Ebbler. Although the security agreement is not in the record, it appears that the security agreement granted the Bank a security interest in Ebbler's inventory, and accounts receivable. The record is unclear as to whether the security interest covered proceeds and whether it was properly perfected.
 
 
 4
 The bankruptcy court made the following factual findings. Purchases made by the debtor within ninety days prior to bankruptcy totaled $170,911.33. The cost of goods sold during the ninety day period equaled $214,065.19. The ending inventory, as of the date of filing bankruptcy, was $67,000.00. The cost of the beginning inventory ninety days prior to the filing of the bankruptcy was calculated by the bankruptcy court in the following manner.
 
 
 5
 cost of goods sold ($214,065.19)
k ending inventory ($ 67,000.00)
- purchases ($170,911.33)
------------ -------------
beginning inventory $110,000.00
 
 
 6
 The bankruptcy court also found that there were $19,000 worth of accounts receivable, subject to the Bank's security interest. These receivables were added to beginning inventory. The bankruptcy court then concluded:
 
 
 7
 12. On the basis on [sic] the foregoing figures, the creditor Bank received a preference as described in 11 U.S.C. Sec. 547(c)(5) of approximately $75,000.00, i.e., the difference between what the Bank received on account of the debt it was owed ($204,571.61), less the debtor's beginning inventory ($110,000.00) and its accounts receivable ($19,000).
 
 
 8
 In re Ebbler Furniture & Appliances, Inc., No. 84-0150 (Bankr.S.D.Ill.1985) (unpublished order).
 
 
 9
 The bankruptcy court noted that a discrepancy existed in the amount of $15,000 as to the value of the ending inventory. Consequently, the bankruptcy court reduced the preference by $15,000.00, and found a preference of $60,000.00.
 
 
 10
 Beginning approximately three to four months before filing its petition, Ebbler conducted a going out of business sale. Ebbler ceased doing business on November 30, 1983. At that time Ebbler was indebted to the Bank in the amount of $50,000 and had $67,000 in inventory (valued on a cost basis). The Bank repossessed $50,000 worth of inventory and sold it at cost applying the $50,000 proceeds to the debt.
 
 
 11
 Finally, and perhaps most important for purposes of this appeal, the bankruptcy court determined that the parties "were relying on the cost basis of the inventory in evaluating the security for the indebtedness." Id.
 
 II.
 A.
 
 12
 When a court reviews a bankruptcy court decision on appeal the court must adopt the bankruptcy court's findings of fact unless clearly erroneous. In re Kimzey, 761 F.2d 421, 423 (7th Cir.1985); In re Evanston Motor Company, Inc., 735 F.2d 1029, 1031 (7th Cir.1984). The clearly erroneous rule does not apply to review of the bankruptcy court's conclusions of law. In re Kimzey, 761 F.2d 421, 423 (7th Cir.1985).
 
 
 13
 This case involves a mixed question of fact and law. The definition of value in Sec. 547(c)(5) is a legal question, which depends on factual determinations made by the bankruptcy court. The factual determinations are subject to the clearly erroneous standard; but the manner in which these factual conclusions implicate the legal definition of value is subject to a de novo review. We note, however, that by deferring to these initial factual determinations, subject to review by the district courts, we are not abdicating our role as the reviewer of the definition of value adopted by the lower courts.
 
 B.
 
 14
 The issue presented is the interpretation of "value" as used in Sec. 547(c)(5) of the Bankruptcy Code.[1] Section 547(c)(5) applies to situations where a secured creditor does not have sufficient collateral to cover his outstanding debt. Subparagraph five (5) codifies the "improvement in position test" and overrules an earlier line of cases such as Grain Merchants of Indiana, Inc. v. Union Bank & Savings Co., 408 F.2d 209 (7th Cir.), cert. denied, 396 U.S. 827, 90 S.Ct. 75, 24 L.Ed.2d 78 (1969). Section 547(c)(5) prevents a secured creditor from improving its position at the expense of an unsecured creditor during the 90 days prior to filing the bankruptcy petition. See generally 4A Collier on Bankruptcy p 547.41, p. 547-133 (15th ed.).
 
 
 15
 The first step in applying section 547(c)(5) is to determine the amount of the loan outstanding 90 days prior to filing and the "value" of the collateral on that day. The difference between these figures is then computed. Next, the same determinations are made as of the date of filing the petition. A comparison is made, and, if there is a reduction during the 90 day period of the amount by which the initially existing debt exceeded the security, then a preference for section 547(c)(5) purposes exists. See generally 4A Collier on Bankruptcy p 547.41. The effect of 547(c)(5) is to make the security interest voidable to the extent of the preference. Id. at p. 547-134. Of course, if the creditor is fully secured 90 days before the filing of the petition, then that creditor will never be subject to a preference attack. Id.; see also Matter of Missionary Baptist Foundation, 796 F.2d 752, 760 n. 11 (5th Cir.1986).
 
 C.
 
 16
 The language of section 547(c)(5), the "value of all security interest for such debt," was purposely left without a precise definition. See generally H.R. No. 595, S.Rep. No. 989, 95th Cong., 2d Sess., reprinted in 1978 U.S.Code Cong. & Ad.News, 5787, 6176; N. Cohen, "Value" Judgments: Account Receivable Financing and Voidable Preferences Under the New Bankruptcy Code, 66 Minn.L.Rev. 639, 653 (1982) (hereinafter "Cohen"); In re Beattie, 31 B.R. 703, 714 (W.D.N.C.1983). Furthermore, it has been persuasively argued that the other Bankruptcy Code sections' definitions of "value" would not be useful for section 547(c)(5) purposes. Cohen, supra, at 651-654. Thus, the only legislative guidance is "that we are to determine value on case-by-case basis, taking into account the facts of each case and the competing interests in the case." Matter of Lackow Bros., Inc., 752 F.2d 1529, 1532 (11th Cir.1985), citing H.R.Rep. No. 545, 95th Cong., 1st Sess. 356 (1977) reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6312.
 
 
 17
 The method used to value the collateral is crucial in determining whether or not the bank received a preference. The Bank urges that we adopt an "ongoing concern"[2] value standard, which, in this case, would be cost plus a 60% mark-up. The Bank relies on Lackow Bros., supra, as authority for the use of this definition of value. We find Lackow Bros. readily distinguishable. There, the only evidence of value before the court was ongoing concern value. As the Eleventh Circuit stated: "The only evidence in the record of value for the ninetieth day prior to the filing of the bankruptcy is the ongoing concern value; therefore, this is the only standard of valuation that can be applied to determine if Creditor's position improved...." Lackow Bros. at 1532.
 
 
 18
 Another view as to how value should be defined is proposed by Professor Cohen. He proposes an after-the-fact determination of value. In his article discussing accounts receivable, Cohen argues that the courts should look at the actual manner in which the collateral was liquidated, i.e. cost or ongoing concern. Whatever method is used to dispose of the collateral, Cohen argues, should be used to value the collateral 90 days before the filing of the bankruptcy petition. Cohen, supra, at 664. At least one circuit has found Cohen's reasoning useful, though not necessarily adopting it as a rigid rule. Matter of Missionary Baptist Foundation, 796 F.2d 752, 761-62 (5th Cir.1986).
 
 
 19
 In Missionary Baptist Foundation, supra, the appellate court remanded to the district court for factual determinations as to whether or not the bank improved its position during the preference period. Id. at 761. The court noted, however, that merely remanding for factual findings may not be sufficient in light of the ambiguous meaning of "value" in section 547(c)(5). Id. at 761-62. The Fifth Circuit quoted with approval Cohen's admonition of an individualized approach in defining value and his hindsight solution of the problem. We follow the Fifth Circuit's lead and hold that under Section 547(c)(5) value should be defined on a case by case basis, with the factual determinations of the bankruptcy court controlling.
 
 D.
 
 20
 In the present case we affirm the bankruptcy court's use of cost as the method for valuing the collateral for 547(c)(5) purposes. The bankruptcy court found that the parties were using a cost basis for valuing the security. Furthermore, when the Bank removed inventory with a cost of approximately $50,000, about a week before the petition was filed, Ebbler was given credit for that amount--$50,000. We do not find the bankruptcy court's factual findings so clearly erroneous as to warrant reversal. In re Kimzey, 761 F.2d 421, 423 (7th Cir.1985).
 
 
 21
 Using these factual findings the bankruptcy court applied cost as the legal definition of "value." We affirm the use of this definition as applied to these facts.
 
 III.
 
 22
 We remand to the bankruptcy court, however, for a determination as to the amount of the preference. The bankruptcy court found, weighing the conflicting evidence, that a preference of $60,000 existed. It is not clear why the bankruptcy court did not consider the $43,000 in cash which the debtor had in hand at the time of filing the bankruptcy petition.
 
 
 23
 The bankruptcy court held that the Bank had a security interest in the inventory and accounts receivable. The bankruptcy court's opinion is silent as to whether or not this security agreement covered cash proceeds, and whether or not the $43,000 in actuality was cash proceeds of the inventory. It must also be determined if these interests were properly perfected. The only evidence in the record is Mr. Ebbler's testimony that all the proceeds from sales of inventory were deposited into an account at the Bank. The bank statement shows that on the 90th day prior to the bankruptcy the account contained $43,000. Depending on the court's findings on these issues an adjustment downward in the amount of the preference might be appropriate.
 
 IV.
 
 24
 For the reasons set forth we affirm the use of cost as a basis for defining value in section 547(c)(5) of the Bankruptcy Code. We remand, however, for a determination as to how the debtor's cash on hand affected the preference amount.
 
 
 25
 EASTERBROOK, Circuit Judge, concurring.
 
 
 26
 This case involves the meaning of "value" under 11 U.S.C. Sec. 547(c)(5). I join the court's opinion, which concludes that the statute does not require bankruptcy judges to use one universal definition. The history of condemnation litigation shows that a single definition of "value" is not within judicial grasp. Still, we need not leave bankruptcy judges and litigants adrift. Security interests must be appraised with some frequency in bankruptcy litigation. The greater the uncertainty in the legal rule, the harder it is to settle pending cases. "Anything goes" is not a durable rule. The parties cannot know their entitlements until bankruptcy, district, and appellate courts have spoken. One important function of appellate courts is to provide additional clarity, when that is reasonably possible. It is possible here. The bankruptcy judge did better than to avoid an abuse of discretion. He decided the case correctly.
 
 
 27
 "Value" is defined for a purpose, which sets limits on the admissible standards of appraisal even though it does not govern all cases. Section 547(c)(5) requires the court to find whether the secured creditor improved its position at the expense of other investors during the 90 days before the filing of the petition in bankruptcy. This calls for two appraisals, one on the day of filing and one 90 days earlier, using the same method each time, to see whether there was an improvement in position. The only standard that might plausibly be used in this case is wholesale cost of goods, because that is the only standard that could have been applied on both dates.
 
 
 28
 Wholesale cost is also the appropriate standard as a rule because wholesale and retail goods are different things. A furniture store, a supermarket, or the manufacturer of a product (the three situations are identical) uses raw materials purchased at wholesale to produce a new item. In the retailing business the difference between the wholesale price and the retail price is the "value added" of the business. It is the amount contributed by storing, inspecting, displaying, hawking, collecting for, delivering, and handling warranty claims on the goods. This difference covers the employees' wages, rent and utilities of the premises, interest on the cost of goods, bad debts, repairs, the value of entrepreneurial talent, and so on. The increment of price is attributable to this investment of time and other resources. The Bank does not have a security interest in these labors. It has an interest only in its merchandise and cash on hand.* The value of its interest depends on what the Bank could do, outside of bankruptcy, to realize on its security. See Thomas H. Jackson, Avoiding Powers in Bankruptcy, 36 Stan.L.Rev. 725, 756-77 (1984). What it could do is seize and sell the inventory. It would get at most the wholesale price--maybe less because the Bank would sell the goods "as is" and would not offer the wholesaler's usual services to its customer. The Bank does not operate its own furniture store, and if it did it would still incur all the costs of retailing the goods, costs that would have to be subtracted from the retail price to determine the "value" of the inventory on the day the Bank seized it. Cf. Contrail Leasing Partners, Ltd. v. Consolidated Airways, Inc., 742 F.2d 1095, 1101 (7th Cir.1984); Uniform Commercial Code Sec. 9-504(1)(a).
 
 
 29
 To give the Bank more than the wholesale value is to induce a spate of asset-grabbing among creditors, which could make all worse off. If the Bank gets the whole increment of value (from wholesale to retail) during the last 90 days, other creditors may respond by watching the debtor closely and propelling it into bankruptcy when it has a lower inventory (and therefore less "markup" for the Bank to seize). The premature filing may reduce the value of the enterprise. There are other defensive measures available to creditors. The principal function of Sec. 547(c)(5) is to reduce the need of unsecured creditors to protect themselves against the last-minute moves of secured creditors. It would serve this function less well if goods subject to a security interest were appraised at their retail price.
 
 
 30
 Too, the Bank's security interest does not reach the "going concern" value of the debtor; it had security in the goods, not in the firm. To value the inventory in a way that reflects "going concern" value is to give the Bank something for which it did not contract. At all events, this wrinkle does not make a difference. If Ebbler had been sold as a going venture 90 days before the filing of the bankruptcy petition, the buyer of the business would have paid only wholesale price for Ebbler's inventory. If Ebbler had been at the peak of health, the buyer would have paid no more for inventory. A buyer would not have paid retail, because it would have had to invest the additional time and money necessary to obtain the retail price. So whether Ebbler is valued as a defunct business or as a going business sold to a hypothetical buyer on the critical date, wholesale is the right valuation, because it reflects the price that a willing buyer would pay after arms'-length negotiation. (The "going concern" value of Ebbler is reflected in its name, reputation, customer list, staff, and so on--things in which the Bank did not have a security interest.)
 
 
 31
 To put this differently, a willing buyer of a flourishing retail or manufacturing business will not pay more than the wholesale price for inventory of goods or parts on hand, because this buyer could purchase the same items on the market from the original sellers. Why pay Ebbler $500 for a sofa when you can get the same item for $200 from its manufacturer? Nothing would depend on whether Ebbler planned to stay in business. The court therefore properly does not allow the outcome of this case to turn on the fact that Ebbler chose a Chapter 7 liquidation rather than a Chapter 11 reorganization. Chapter titles are of little use in valuing assets under Sec. 547(c)(5). A "liquidation" may be a sale of the business en bloc as an ongoing concern, and a "reorganization" may be a transition from one line of business to another.
 
 
 32
 The difference between the wholesale and retail prices of the inventory is the compensation that the other factors of production--the employees, landlords, utilities, etc.--obtain for their services. To appraise Ebbler's inventory at "retail" is to award to the Bank the entire value of the work done during the last 90 days by these other creditors of Ebbler. It is to allow the Bank to improve its position at their expense. Because a valuation at "retail" would produce exactly the consequence that Sec. 547(c)(5) is designed to avert, the bankruptcy court wisely chose to appraise the goods at wholesale. The court leaves to another day the question whether retail price is ever an appropriate measure of value under Sec. 547(c)(5). The observation that the bankruptcy court has leeway, however, does not imply that the court's discretion should be exercised without reference to the function of Sec. 547(c)(5) and the limits of the security interest.
 
 
 
 [1]
 This section states that:
 (c) The trustee may not avoid under this section a transfer--
 5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of--
 (A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or
 (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or
 (B) the date on which new value was first given under the security agreement creating such security interest....
 11 U.S.C. Sec. 547(c)(5) (emphasis added).
 
 
 [2]
 The authors of Collier on Bankruptcy suggest that in a liquidation case under chapter 7, "it would seem that liquidation value should be used, although other standards of value may be appropriate under certain circumstances. In a case under chapter 9, 11, or 13, it would seem that a going concern value should be used although liquidation value may be appropriate in certain cases." 4A Collier on Bankruptcy p 547.41, at 547-135; Lackow Bros., 752 F.2d at 1532. We deem it inappropriate to bind this circuit to these distinctions at the present time. We note, however, that the Eleventh Circuit has cited this distinction, although commenting that it "is not set in cement." Id. We believe that the definition of "value" should be individualized and variable enough so as to be tailored to each situation
 
 
 *
 The Bank's interest in the proceeds of sales is not the same as an interest in the whole retail price for unsold inventory. An ongoing financing arrangement provides for operating expenses, too, to come out of proceeds. The security interest on any given day covers only identified proceeds, an asset that is identifiable and significantly smaller than the wholesale or retail value of the entire inventory